# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE ASSAD, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | |
| ) | Case No. _____ |
| v. ) ) | |
| ) | JURY TRIAL DEMANDED |
| CALGON CARBON CORPORATION, J. ) | |
| RICH ALEXANDER, RANDALL S. ) | CLASS ACTION |
| DEARTH, WILLIAM J. LYONS, LOUIS S. ) | |
| MASSIMO, WILLIAM R. NEWLIN, JOHN ) | |
| J. PARO, JULIE S. ROBERTS, TIMOTHY ) | |
| G. RUPERT, DONALD S. TEMPLIN, ) | |
| KURARAY CO., LTD., KURARAY ) | |
| HOLDINGS U.S.A., INC., and KJ MERGER ) | |
| SUB, INC., ) ) | |
| Defendants. ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on September 21, 2017 (the "Proposed Transaction"), pursuant to which Calgon Carbon Corporation ("Calgon Carbon" or the "Company") will be acquired by Kuraray Co., Ltd. ("Kuraray Co."), Kuraray Holdings U.S.A., Inc. ("Parent"), and KJ Merger Sub, Inc. ("Merger Sub," and together with Kuraray Co. and Parent, "Kuraray").

2.      On September 21, 2017, Calgon Carbon's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger

(the "Merger Agreement") with Kuraray.  Pursuant to the terms of the Merger Agreement, if Calgon Carbon's stockholder approve the Proposed Transaction, they will receive $21.50 in cash for each share of Calgon Carbon stock they own.

3.      On October 27, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Calgon Carbon common stock.

9.     Defendant Calgon Carbon is a Delaware corporation and maintains its principal executive offices at 3000 GSK Drive, Moon Township, Pennsylvania 15108.  Calgon Carbon's common stock is traded on the NYSE under the ticker symbol "CCC."

10.     Defendant J. Rich Alexander ("Alexander") is a director of Calgon Carbon.

11.     Defendant Randall S. Dearth ("Dearth") is the Chairman of the Board, President, and Chief Executive Officer ("CEO") of Calgon Carbon.

12.     Defendant William J. Lyons ("Lyons") is a director of Calgon Carbon.

13.     Defendant Louis S.  Massimo ("Massimo") is a director of Calgon Carbon.

14.     Defendant William R. Newlin ("Newlin") is a director of Calgon Carbon.

15.     Defendant John J. Paro ("Paro") is a director of Calgon Carbon.

16.     Defendant Julie S. Roberts ("Roberts") is a director of Calgon Carbon.

17.     Defendant Timothy G. Rupert ("Rupert") is a director of Calgon Carbon.

18.     Defendant Donald C. Templin ("Templin") is a director of Calgon Carbon.

19.     The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20.     Defendant Kuraray Co. is a Japanese entity, the beneficial owner of Parent and Merger Sub, and a party to the Merger Agreement.

21.     Defendant Parent is a Delaware corporation, a wholly-owned subsidiary of Kuraray Co., and a party to the Merger Agreement.

22.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action on behalf of itself and the other public

stockholders of Calgon Carbon (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.  As of September 19, 2017, there were approximately 50,792,766.9282 shares of Calgon Carbon common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the

Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

*Background of the Company*

30.    Calgon Carbon was founded in 1967 and it is a global leader in innovative solutions, high quality products, and reliable services designed to protect human health and the environment from harmful contaminants in water and the air.  As a leading manufacturer of activated carbon, with broad capabilities in ultraviolet light disinfection, the Company provides purification solutions for drinking water, wastewater, pollution abatement, and a variety of industrial and commercial manufacturing processes.

31.    The Company offers a diverse range of products, services, and equipment specifically developed for the purification, separation, and concentration, and filtration of liquids, gases, and other media through its reportable business segments: Activated Carbon and Service, Equipment, Consumer, and Other.

32.    The Activated Carbon and Service segment manufactures and markets granular and powdered activated carbon for use in many distinct market applications that remove organic compounds from water, air, and other liquids and gases.  The Service aspect of this segment consists of carbon reactivation and the leasing, installation, monitoring and maintenance of carbon adsorption equipment.  Sales for the Activated Carbon and Service segment were $454.6 million, $486.5 million, and $498.2 million for the years ended December 31, 2016, 2015, and 2014, respectively.

33.    The Equipment segment provides solutions to customers' air, water, and other liquid purification problems through the design, fabrication, installation, and sale of equipment

systems that utilize one or more of the Company's enabling technologies: carbon adsorption, ultraviolet light, and advanced ion-exchange technologies.  Sales for the Equipment segment were $38.9 million, $39.3 million, and $45.3 million for the years ended December 31, 2016, 2015, and 2014, respectively.

34.    The Consumer segment supplies activated carbon cloth for use in medical, military, and industrial applications.  Sales for the Consumer segment were $8.7 million, $9.2 million, and $11.6 million for the years ended December 31, 2016, 2015, and 2014, respectively.

35.    Finally, the Company's Other segment is comprised of the results of a company that Calgon Carbon acquired in 2016.  Specifically, on November 2, 2016, the Company completed the acquisition of the wood-based activated carbon, reactivation and mineral-based filtration media business of CECA, a subsidiary of Arkema Group ("CECA").  CECA manufactures and markets granular and powdered wood-based activated carbon, coal-based activated carbon reactivation, diatomaceous earth, and perlite filtration media for use in various distinct market applications.  They are used primarily for decolorization, purification, decontamination, and filtration of liquids in various applications including food and beverage, industrial, fine chemicals and pharmaceuticals.  With four manufacturing facilities located in France and two in Italy, the 2016 sales of CECA were $12.1 million from its date of acquisition on November 2, 2016 through December 31, 2016.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

36.    Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

37.    The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

38.     The Proxy Statement omits material information regarding Calgon Carbon's financial projections, as well as the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Morgan Stanley & Co. LLC ("Morgan Stanley").

39.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

40.     Although the Proxy Statement discloses certain of the Company's financial projections, it fails to disclose certain of the projections that Morgan Stanley actually used in its valuation analyses to support its opinion that the merger consideration is fair to the Company's stockholders.  For example, in performing its valuation analyses, Morgan Stanley generally used two sets of projections of Calgon Carbon: one set was provided by Company management, and the other set were Wall Street consensus estimates (referred to in the Proxy as the "Street Case").  The Proxy Statement discloses some of the management projections, but completely fails to disclose to stockholders the Street Case projections that were relied upon by Morgan Stanley in its analyses.  Because the Street Case projections were used by Morgan Stanley in its analyses, they must be disclosed to stockholders.

41.     Further, in performing its Discounted Cash Flow Analysis, Morgan Stanley used the Company's projected unlevered free cash flows for years 2017 through 2021.  According to

the Proxy Statement: "The Management Case estimates [of unlevered free cash flows] through fiscal year 2021 were based on projections provided by Calgon Carbon's management. The Street Case estimates [of unlevered free cash flows] were based on the median Wall Street broker projections through fiscal year 2019 and which were then extrapolated forward based on Calgon Carbon's management's estimated revenue growth and estimated margin improvement rates for fiscal years 2020 and 2021."

42.     The Proxy Statement, however, fails to (but must) disclose the Company's unlevered free cash flows for years 2017 through 2021, as used by Morgan Stanley in its analysis. The disclosure of these projections is necessary so that stockholders can understand the Company's long-term standalone prospects, and test the various assumptions that were selected by Morgan Stanley in its analysis.

43.     Additionally, the Proxy Statement discloses certain Calgon Carbon management projections for non-GAAP (generally accepted accounting principles) metrics, including EBITDA and Adjusted Net Income Per Share, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

44.     To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Proxy Statement that: "EBITDA should not be considered in isolation or as a substitute for net income, operating income, cash flows from operating activities or any other measure of financial performance presented in accordance with GAAP or as a

measure of a company's profitability or liquidity.  Because EBITDA excludes some, but not all, items that affect net income, this measure may vary among companies, including Calgon Carbon. The EBITDA data presented below may not be comparable to similarly titled measures of other companies."  As such, stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

45.     With respect to Morgan Stanley's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the Company's projected Management Case and Street projections of unlevered free cash flows for years 2017 through 2021, and their respective line items, as used by Morgan Stanley in its analysis; (ii) the Street Case estimates based on the median Wall Street broker projections through fiscal year 2019, the extrapolated projections through 2021, and the estimated revenue growth and estimated margin improvement rates for fiscal years 2020 and 2021 provided by Calgon Carbon's management; (iii) the inputs and assumptions underlying the discount rate range of 8.4% to 10.1% used by Morgan Stanley in its analysis; and (iv) the perpetuity growth rate ranges implied by Morgan Stanley's analysis.

46.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Certain Calgon Carbon Unaudited Prospective Financial Information;" and (ii) "Opinion of Morgan Stanley & Co. LLC."

47.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Calgon Carbon**

48.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Calgon Carbon is liable as the issuer of these statements.

50.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

51.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

52.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

53.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

54.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

55.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Kuraray**

56.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57.     The Individual Defendants and Kuraray acted as controlling persons of Calgon Carbon within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Calgon Carbon and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

58.     Each of the Individual Defendants and Kuraray was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

60.     Kuraray also had direct supervisory control over the composition of the Proxy

Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

61.     By virtue of the foregoing, the Individual Defendants and Kuraray violated Section 20(a) of the 1934 Act.

62.     As set forth above, the Individual Defendants and Kuraray had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  November 2, 2017

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone:  (302) 295-5310
Facsimile:  (302) 654-7530

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone:  (484) 324-6800
Facsimile:  (484) 631-1305

**LAW OFFICE OF ALFRED G.
YATES, JR., P.C.**

By:   /s/ **Alfred G. Yates, Jr.**
       Alfred G. Yates, Jr. (PA17419)
       Gerald L. Rutledge (PA62027)
       300 Mt. Lebanon Boulevard,
       Suite 206-B
       Pittsburgh, PA 15234
       Telephone: (412) 391-5164
       Facsimile: (412) 471-1033
       Email: yateslaw@aol.com

       *Attorneys for Plaintiff*